**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| In re ) | |
| ) | |
| FALCON PRODUCTS, INC., ) | |
| a Delaware corporation, et al., ) | |
| ) | |
| Debtors, ) | |
| _____ ) | |
| ) | |
| FALCON CREDITOR TRUST, ) | Lead Case |
| ) | No. 4:07-CV-1901 CAS |
| Appellant, ) | |
| ) | |
| v. ) | |
| ) | |
| FALCON PRODUCTS, INC., et al., ) | |
| n/k/a Commercial Furniture Group, Inc., ) | |
| ) | |
| Appellees. ) | |
| _____ ) | |
| ) | |
| LATIGO PARTNERS, L.P., ) | Associated Case |
| ELLIOT MANAGEMENT, L.P., ) | No. 4:07-CV-1902 CAS |
| ASM CAPITAL ADVISORS, LLC, ) | |
| REGEN CAPITAL, LLC, and ) | |
| JORDAN CAPITAL, L.P., ) | |
| ) | |
| Appellants, ) | |
| ) | |
| v. ) | |
| ) | |
| FALCON PRODUCTS, INC., et al., ) | |
| n/k/a Commercial Furniture Group, Inc., ) | |
| ) | |
| Appellees. ) | |

**MEMORANDUM OPINION**

These two bankruptcy appeals were filed by appellants Falcon Creditor Trust (the "Trust"), and Latigo Partners, L.P., Elliot Management, L.P., ASM Capital Advisors, LLC, Regen Capital, LLC, and Jordan Capital, L.P. (collectively the "Elliot Group"), and were consolidated on motion of

the Trust.[1]  The Trust and the Elliot Group appeal from the United States Bankruptcy Court for the Eastern District of Missouri's Order Denying Motion to Grant Derivative Standing to the Falcon Creditor Trust, issued October 9, 2007 in Case No. 05-41108-399.  The appellants elected to have the appeal heard by the district court rather than the Bankruptcy Appellate Panel.  For the following reasons, the Court concludes that the Bankruptcy Court's decision should be affirmed.

**Jurisdiction and Standard of Review**.

District courts have jurisdiction to review appeals from bankruptcy court final orders and judgments pursuant to 28 U.S.C. § 158(a)(1).  See In re Gaines, 932 F.2d 729, 731 (8th Cir. 1991).  The Court therefore has jurisdiction over this matter.

Bankruptcy Rule 8013 establishes the standard of review to be applied by district courts with respect to bankruptcy appeals:

> On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings.  Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

Rule 8013, Fed. R. Bankr. P.  Thus, the Court reviews the bankruptcy court's legal conclusions de novo and its findings of fact for clear error.  See In re Reynolds, 425 F.3d 526, 531 (8th Cir. 2005), cert. denied sub nom Educational Credit Mgmt. Corp. v. Reynolds, 127 S. Ct. 46 (2006); In re LeMaire, 898 F.2d 1346, 1349 (8th Cir. 1990) (en banc).

---

[1]The Notice of Appeal in Case No. 4:07-CV-1902 CAS was filed by, inter alia, Latigo Partners, L.P.  A footnote in the Motion to Consolidate Appeals (Doc. 5) filed by the Eliot Group stated, "The Court is advised that Latigo Partners, L.P. has withdrawn from the litigation.  The remaining four Creditor Appellants intend to pursue the appeal."  In the Order of Consolidation (Doc. 9) granting the Motion to Consolidate Appeals, the Court advised counsel that Latigo Partners, L.P. must formally seek to withdraw from this action by filing an appropriate motion or notice.  No such motion or notice was ever filed.  The Court notes that the Elliot Group's Opening Brief states in pertinent part, "Latigo Partners, L.P., which was one of the creditors supporting the Creditor Trust's motion below, elected not to join the Creditor Appellants in this appeal."  See Doc. 13 at 9, n.5.

**Factual and Procedural Background**.

The Bankruptcy Court made detailed findings of fact regarding this dispute which no party challenges on appeal as erroneous, and the Court adopts those findings. See Order Denying Motion to Grant Derivative Standing to the Falcon Creditor Trust at 2-15, Ex. 4 to Debtors'/Appellees' Brief (Doc. 17). Therefore the Court does not need to engage in a lengthy recitation of the facts and will instead give a short summary, stating the basis of the case and focusing on the legal issues raised on appeal.

Falcon Products, Inc. ("Falcon") and eight affiliated companies (collectively the "Debtors") voluntarily filed for protection under Chapter 11 of the bankruptcy laws in January 2005. The nine cases were consolidated for procedural purposes and were administered jointly in the Bankruptcy Court as Case No. 05-41108-399. On October 18, 2005, the Bankruptcy Court confirmed the Debtors' Third Amended Joint Plan of Reorganization (the "Plan"), and the Plan became effective on November 15, 2005. The Plan was the fourth version proposed by the Debtors and their two largest unsecured creditors (the "Co-Proponents"), and resulted from negotiations between various constituencies in the Debtors' cases, including the Debtors, the Co-Proponents, and the Official Committee of Unsecured Creditors ("Committee").

The Plan made no payments to unsecured creditors but provided that those creditors would receive the net proceeds of certain litigation. The Plan provided for creation of the Trust as the entity to pursue such litigation on behalf of the unsecured creditors. Pursuant to the Plan, certain rights and causes of action previously held by the Debtors vested in the Trust. The Trust was authorized to bring avoidance actions and distribute the proceeds of such litigation to the general unsecured creditors, and to prosecute certain claims which were held by individual general unsecured creditors and assigned to the Trust ("Individual Creditor Claims"). The Plan also created the Creditor Trust Litigation Fund, which was $200,000 loaned by the Reorganized Debtor to the Trust for the sole purpose of prosecuting the avoiding power causes of action. The Creditor Trust Litigation Fund could not be used to fund any litigation by the Trust on Individual Creditor Claims. (Plan, § V.B.1.

at 54). The Reorganized Debtor retained other causes of action, including certain litigation defined in the Plan as the Audit Committee Report Retained Rights of Action. The Plan did not authorize the Trust to pursue the Audit Committee Report Retained Rights of Action.

Pursuant to the Plan, all of the Debtors with the exception of Seller & Josephson, Inc. were merged into the Reorganized Debtor which has assumed the business and management of the Debtors' property. All of the property to be transferred under the Plan was transferred, and distributions under the Plan commenced and have been completed for all but one class of claims. On March 23, 2006, the Bankruptcy Court entered an order issuing a final decree closing the cases of each of the Debtors except for Falcon (the "Final Decree Order"). The Final Decree Order provided that Falcon's Chapter 11 case was to remain open until it was fully administered in accordance with 11 U.S.C. § 350 and Federal Rule of Bankruptcy Procedure 3022.

In October 2004, before the bankruptcy proceeding was filed, Falcon publicly reported that the independent Audit Committee of its Board of Directors ("Audit Committee") had begun an investigation into accounting-related matters. The Audit Committee hired independent legal counsel and a forensic accounting firm (the "Auditors") to conduct the investigation. In June 2005, the Auditors presented their final report (the "Audit Committee Report") to Falcon's Board of Directors. The Audit Committee determined that as a result of accounting errors and irregularities, Falcon's financial statements were materially misstated for the year ending November 1, 2003, and for the first three quarters of the fiscal year ending October 30, 2004, which ultimately led to a write off of $34.4 million. The Audit Committee also determined that certain former members of Falcon's senior management bore responsibility for the accounting irregularities, and certain former members of senior management who had a responsibility to establish and implement policies and procedures to assure the integrity of Falcon's financial reporting had not done so.

The Audit Committee Report Retained Rights of Action is the Reorganized Debtor's potential cause of action against Falcon's former members of senior management responsible for the accounting irregularities and omissions which led to the $34.4 million write off. After investigating

4

its options, including by conducting detailed reviews of the matter with three separate law firms, the Reorganized Debtor elected not to file any litigation related to the Audit Committee Report Retained Rights of Action. The decision was made in part based on the impact that pursuit of the action would have on the Reorganized Debtor's business. In May 2007, more than two years after the Plan was confirmed, the Reorganized Debtor notified the Trust that it had decided not to pursue the Audit Committee Report Retained Rights of Action.

The Individual Creditor Claims are causes of action retained by the holders of general unsecured claims, arising in connection with the accounting errors and irregularities outlined in the Audit Committee Report. (Plan, § I.A. at 19). The Plan provides a mechanism for the individual creditors to assign their rights in the Individual Creditor Claims to the Trust for prosecution on their behalf. (Plan, § V.B.1. at 54). As discussed above, however, the Plan prohibits the Trust from using any proceeds of the Creditor Trust Litigation Fund to fund litigation relating to the Individual Creditor Claims.

In August 2007, the Trust filed a Motion to Grant Derivative Standing to the Falcon Creditor Trust with the Bankruptcy Court, asking it to use its power under Section 105(a) of the Bankruptcy Code to grant the Trust derivative standing to pursue the Audit Committee Report Retained Rights of Action. In the Motion, the Trust acknowledged that the Audit Committee Report Retained Rights of Action are the property of the Reorganized Debtor and are not the property of or within the province of the Trust. The Reorganized Debtor opposed the motion and the Bankruptcy Court held a hearing on the motion on September 19, 2007.

At the hearing, the Trust made no mention of Section 105(a) of the Bankruptcy Code, and the Bankruptcy Court deemed the argument abandoned. Instead, the Trust argued that (1) the Reorganized Debtor has an affirmative duty to pursue the Audit Committee Report Retained Rights of Action and does not have the right to abandon the actions, and (2), in the alternative, the Audit Committee Report Retained Rights of Action did not vest in the Reorganized Debtor but instead the

5

Trust has the co-ability to prosecute them and the Trust is merely seeking confirmation that the Plan so provides.

The Bankruptcy Court denied the Trust's Motion to Grant Derivative Standing to the Falcon Creditor Trust by its Order of October 9, 2007 (the "Order"). The Bankruptcy Court described the motion as presenting a "straightforward case of interpretation of a confirmed plan." Order at 16. In a summary of its findings, the Bankruptcy Court stated:

> In the Motion, the Trust is seeking control over the Audit Committee Report Retained Rights of Action. The Plan clearly gives control over such litigation to the Reorganized Debtor. The Reorganized Debtor carefully considered such litigation and elected – with the advice of counsel – not to pursue it. The Plan gives the Reorganized Debtor the right to do so. The Plan was confirmed two years ago and has been substantially consummated.
>
> No matter how the Trust labels its request, the Trust is asking this Court to modify the terms of the Plan two years after confirmation and after substantial consummation. The change the Trust seeks would materially alter the Plan and would adversely impact the rights of others who supported the Plan as written including the Debtors, [and their two largest unsecured creditors] OCM POF II, and Whipporwill. The Court cannot and will not rewrite the confirmed Plan at this juncture. The unsecured creditors will have to live with the bargain the Committee reached on their behalf and which they accepted in the form of the Plan.

Order at 21.

**Issues on Appeal**.

The Trust and the Elliot Group appeal the Bankruptcy Court's decision, raising the following issues:

>    1. Whether the Reorganized Debtor could refuse to prosecute the Audit Committee Report Retained Rights of Action for the benefit of unsecured creditors pursuant to the confirmed plan of reorganization?
>
>    2. Whether the Falcon Creditor Trust has a direct right to prosecute the Audit Committee Report Retained Rights of Action for the benefit of unsecured creditors?
>
>    3. Whether, after the Reorganized Debtor refused to prosecute the Audit Committee Report Retained Rights of Action, the Falcon Creditor Trust had the right, derivatively or otherwise, to prosecute those claims for the benefit of unsecured creditors?
>
>    4. Whether the confirmed plan of reorganization and confirmation order were ambiguous regarding the obligation of the Reorganized Debtor and/or the right of the

Falcon Creditor Trust to prosecute the Audit Committee Report Retained Rights of Action?

5. Whether the Bankruptcy Court erred in its Order Denying Motion to Grant Derivative Standing to the Falcon Creditor Trust?

**Discussion**.

As a threshold matter, the parties disagree as to the standard of review the Court must apply in this case. Citing precedent from other circuits, the Trust and the Elliot Group assert that the Bankruptcy Court's interpretation of the Plan presents a question of law to be reviewed de novo. See Trust Opening Brief at 6 (Doc. 12), Elliot Group Opening Brief at 2 (Doc. 13). The Debtors assert that under Eighth Circuit precedent, a bankruptcy court's interpretation of a confirmed plan is reviewed for the abuse of discretion, citing In re Dial Business Forms, Inc., 341 F.3d 738, 744 (8th Cir. 2003).

Once a Chapter 11 plan is confirmed, it "acts like a contract that binds the parties that participate in the plan," In re Dial Business Forms, 341 F.3d at 743 (quoted case omitted), and is also an order of the bankruptcy court. Id. at 744. Accordingly, the Eighth Circuit held that a bankruptcy court's interpretation of a confirmed plan is reviewed under the abuse of discretion standard and is entitled to deference. Id. Although the plan in Dial Business Forms was silent on the issue that was in dispute, the Eighth Circuit held that the bankruptcy court did not abuse its discretion in construing the plan, and described the bankruptcy court's ruling as "clearly a plausible interpretation of the confirmed Plan." 341 F.3d at 744. The Court therefore concludes that the appropriate standard of review in this case is abuse of discretion, because the Bankruptcy Court's Order constitutes an interpretation of the Plan and its own order, and as such is entitled to deference.[2] See id. The Bankruptcy Court abuses its discretion only if it bases its ruling on an erroneous view of the law or a clearly erroneous assessment of the evidence. Suggs v. Regency Fin. Corp. (In re Suggs), 377 B.R. 198, 202 (B.A.P. 8th Cir. 2007).

---

[2]The Court concludes the abuse of discretion standard would be properly applied even if the Plan were ambiguous, as appellants assert, based on the Eighth Circuit's holding in Dial Business Forms.

7

The first two issues on appeal are whether the Reorganized Debtor could refuse to prosecute the Audit Committee Report Retained Rights of Action and whether the Trust had a direct right to prosecute the Audit Committee Report Retained Rights of Action. The Bankruptcy Court held that under clear Plan language, the Audit Committee Report Retained Rights of Action vested exclusively in the Reorganized Debtor, and the Plan expressly gave the Reorganized Debtor the right to exercise its powers with respect to the Audit Committee Report Retained Rights of Action "in its sole discretion in accordance with what is in the best interests, and for the benefit, of the Reorganized Debtor." (Plan, § V.H. at 70). The Bankruptcy Court stated that although any recovery on the Audit Committee Report Retained Rights of Action was to be distributed to unsecured creditors, the Plan was clear that all authority with respect to the Audit Committee Report Retained Rights of Action lay with the Reorganized Debtor.

The Bankruptcy Court rejected the Trust's argument that the Reorganized Debtor had an affirmative duty to prosecute the Audit Committee Report Retained Rights of Action based on language in the Plan listing the Reorganized Debtor's rights with respect to the Audit Committee Report Retained Rights of Action, and other language providing that the unsecured creditors "**shall** receive from the Reorganized Debtor the Audit Committee Report Retained Rights of Action Proceeds, **if any** . . . ." (Plan, § III.B.7 at 41) (emphasis added). The Bankruptcy Court stated that a "plan provision requiring litigation proceeds to be delivered to a certain creditor group does not mandate that proceeds will in fact materialize, nor does it impose any affirmative duty on the party entrusted with the litigation to generate litigation proceeds." Order at 18.

The Bankruptcy Court did not abuse its discretion in holding that the Plan provided the Reorganized Debtor with the exclusive right to determine whether or not to pursue the Audit Committee Report Retained Rights of Action, and that the Trust had no right to pursue the Audit Committee Report Retained Rights of Action, based on clear language of the confirmed Plan. The Plan gave the Reorganized Debtor sole authority and discretion to take whatever action it deemed to be in its best interests with respect to the Audit Committee Report Retained Rights of Action.

8

The third issue on appeal is whether the Bankruptcy Court erred in holding that the Trust did not have a right, derivatively or otherwise, to prosecute the Audit Committee Report Retained Rights of Action after the Reorganized Debtor declined to do so. The Bankruptcy Court held that the Trust had no rights with respect to the Audit Committee Report Retained Rights of Action and no grounds for seeking derivative standing to pursue such actions. The Bankruptcy Court's holding was based on Plan language that gives the Reorganized Debtor control of the Audit Committee Report Retained Rights of Action. The Bankruptcy Court stated that this provision of the Plan was negotiated by the parties including the Trust's Predecessor, the Official Committee of Unsecured Creditors ("Committee"), "and was an integral part of the business and financial deal incorporated into the consensual Plan." Order at 19. The Bankruptcy Court found that the Committee admitted as much in its letter to unsecured creditors urging their support of the Plan, and that the Committee negotiated for and received the right to pursue certain litigation on behalf of the general unsecured creditors. The Bankruptcy Court found the Plan language was clear that the Trust had no rights with respect to the Audit Committee Report Retained Rights of Action beyond the right to receive proceeds, if any, from such litigation:

> The Committee negotiated for and received the right to pursue the Committee's Avoiding Power Causes of Action on behalf of general unsecured creditors. The Trust was established as the vehicle to accomplish this task post-confirmation after the Committee ceased to exist. The Reorganized Debtor agreed to provide the Trust with a loan to enable the Trust to fund such litigation. The Committee also negotiated for and received the right to pursue Individual Creditor Claims which creditors elected to assign to it and accepted restrictions on the funding of such litigation. The Committee did not receive in the negotiations any rights with respect to the Audit Committee Report Retained Rights of Action beyond the right of unsecured creditors to receive proceeds **if any** are generated. The Reorganized Debtor retained exclusive control over the Audit Committee Report Retained Rights of Action to do with as it sees fit and in its own interest. This is the deal the Committee agreed to on behalf of unsecured creditors. This is the deal which was incorporated into the Plan which the Committee supported and urged unsecured creditors to accept. This is the deal the unsecured creditors accepted when they voted in favor of the Plan. This is the deal the unsecured creditors are now trying to change.

Order at 20.

The Bankruptcy Court concluded that the Trust's Motion to Grant Derivative Standing could only be interpreted as a request for modification of the Plan two years after it had been confirmed and

9

substantially consummated. The Bankruptcy Court held that the Bankruptcy Code provides no mechanism for modifying a plan after it has been substantially consummated, and that to do so would materially alter the rights of the other parties who relied on the Plan, including the two largest unsecured creditors, the Co-Proponents.

The Bankruptcy Court did not abuse its discretion in holding that the Trust has no right, derivatively or otherwise, to prosecute the Audit Committee Report Retained Rights of Action after the Reorganized Debtor declined to do so. This holding was based on clear language of the Plan, as well as the Bankruptcy Court's knowledge and understanding of the negotiations among the interested parties which resulted in the Plan. The Bankruptcy Court's decision is supported by the Declarations filed by principals of the Co-Proponents, which state that the Reorganized Debtor's retention of the Reserved Rights of Action, including the Audit Committee Report Retained Rights of Action, was a material part of the settlements that resulted in the consensual Plan, and that the Reorganized Debtor's discretion regarding such litigation, including the decision whether or not to prosecute any of the Reserved Rights of Action, was essential for their support of the Plan.

Further, the Bankruptcy Court did not err in finding that the Plan was substantially consummated, see 11 U.S.C. § 1127(b), in concluding that the Bankruptcy Code does not permit modification of a substantially confirmed Chapter 11 plan, id., see In re Olsen, 861 F.2d 188, 190 (8th Cir. 1988), or in concluding that the Trust's Motion to Grant Derivative Standing, if granted, would necessarily constitute a modification to the substantially consummated Plan.

The fourth issue on appeal is whether the Bankruptcy Court erred in holding that the Plan and confirmation order were not ambiguous regarding the obligations of the Reorganized Debtor and/or the rights of the Trust to prosecute the Audit Committee Report Retained Rights of Action. The Court concludes that the Bankruptcy Court did not abuse its discretion when it interpreted and construed the relevant portions of the Plan as clearly and unambiguously defining the Reorganized Debtor's obligations and the Trust's rights with respect to the Audit Committee Report Retained

Rights of Action as discussed above.[3]  Finally, as a result of the foregoing, the Court concludes that the Bankruptcy Court did not err in denying the Trust's Motion to Grant Derivative Standing.

**Conclusion**.

For the foregoing reasons, the Court concludes that the Bankruptcy Court did not abuse its discretion in interpreting the confirmed Plan to conclude that (1) the Audit Committee Report Retained Rights of Action vested solely in the Reorganized Debtor, (2) the Reorganized Debtor was granted the exclusive right to determine whether to pursue the Audit Committee Report Retained Rights of Action, (3) the Trust had no right to pursue the Audit Committee Report Retained Rights of Action and should not be granted derivative standing to do so, and (4) the Plan was unambiguous with respect to the Reorganized Debtor's and Trust's obligations or rights concerning the Audit Committee Report Retained Rights of Action.  The Bankruptcy Court's Order Denying Motion to Grant Derivative Standing to the Falcon Creditor Trust should therefore be affirmed.  The appellants' requests for oral argument are denied.

Accordingly,

**IT IS HEREBY ORDERED** that the United States Bankruptcy Court's Order Denying Motion to Grant Derivative Standing to the Falcon Creditor Trust dated October 9, 2007, is **AFFIRMED**.

An appropriate judgment will accompany this memorandum opinion.

                                        **CHARLES A. SHAW**
                                        **UNITED STATES DISTRICT JUDGE**

Dated this   25th   day of April, 2008.

---

[3] As discussed above, the Court believes the abuse of discretion standard of review would apply even if the Plan were ambiguous.